JUDGE SWAIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARJENT SERVICES, LLC,

        Plaintiff,

v.

JOSEPH M. SCIRE and JOYCE B. SCIRE,

        Defendants.

Case No. 08-CIV-6510

COMPLAINT

## PARTIES AND NATURE OF THE ACTION

1. This case involves sophisticated and wealthy investors -- Defendants -- who sought to engage in speculative high-risk trading through the services of a securities broker/dealer -- Arjent, Ltd. ("Arjent") -- and who now complain that they have suffered losses as a result of certain high risk trades.

2. Despite documentary evidence that shows Defendants' willingness to partake in a sophisticated and aggressive trading strategy, Defendants have filed a Statement of Claim against Arjent and others (Exhibit A) with the Financial Industry Regulatory Authority ("FINRA") (Case No. 07-03443) alleging breaches of fiduciary duty and securities fraud. Such claims have been brought without so much as a cursory analysis by Defendants of the account transactions in question. In short, Defendants do not even know if they lost any money.

3. An arbitration hearing to resolve Defendants' claims has been scheduled for September 9, 10, 11 and 12, 2008. However, on July 7, 2008, Defendants moved to add Plaintiff as an additional party-respondent to the claim on the theory that Plaintiff (a non-signatory to the Arbitration Agreement between Defendants and Arjent) is Arjent's alter ego. A copy of the motion to add Plaintiff as an arbitration respondent is annexed hereto as Exhibit B.

2

4. Consequently, Defendants seek to bind a non-signatory to any potential arbitration award issued by a FINRA Panel. Because Plaintiff was never a party to the Customer Agreement (or any other agreement) with Defendants, and therefore never agreed to arbitrate Defendants' claims, Plaintiff objects to its proposed addition as a party to the underlying arbitration. Accordingly, Plaintiff respectfully files this Complaint to permanently stay the arbitration as against it.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332.

6. This action arises under the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 et. seq.; and the Exchange Act of 1934, 15 U.S.C. § 78a, et. seq.

7. Alternatively, complete diversity of citizenship exists between all parties to this action. Defendants are a married couple and at all relevant times were individuals residing in Aiken, South Carolina. [*See* Statement of Claim, ¶ 1]. Plaintiff is a limited liability company organized and existing under the laws of the State of _____, with its principal place of business in the City, County and State of New York.

8. The amount in controversy exceeds $75,000, exclusive of interest and costs, since the underlying Statement of Claim in arbitration demands $1.8 million.

9. Venue is proper because the claim asserted herein arose within this judicial district, which is also Plaintiff's principal place of business.

## THE UNDERLYING DISPUTE

10. Defendants initiated their relationship with Arjent in August of 2002, when they opened two self-employed IRA retirement ("SEP IRA") accounts with Arjent. On the Customer Agreement forms provided by the Scires, they indicated that they had previously traded their own stocks with Prudential Securities. The Customer Agreement marks the first instance in time, in July of 2002, that the Scires provided written notice of their investment objectives to Arjent. In a box titled "Investment objective," Defendants selected "Growth with Risk" and "Speculation," as their only objectives. Defendants did not select "safety of principal" as an investment objective.

11. In April of 2003, apparently satisfied with Arjent's services to that date, and desirous of a more sophisticated and aggressive trading strategy, Defendants decided to open a master account in which to engage in margin and option day-trading (the "Master Account"). Pursuant to standard Arjent policy, the Scires provided a history of their trading experience and investment goals in an Account Application and another Customer Agreement Form. The information provided in these forms proves that the trading recommendations made in their accounts were reasonable and suitable to the Scires' interests and financial condition.

12. The Scires are high net-worth individuals, capable of understanding and bearing the market risk involved in the aggressive trading strategy they wanted. Defendants stated in documents signed by them that they had an approximate annual income over $250,000 per year, and had a net worth of over $5 million. Defendants also indicated they had more than 10 years experience trading in the market.

13. On their Account Application, when asked to rank their investment objectives, from the most aggressive and risky strategy (Speculation) to the most conservative (Asset

Preservation), the Scires ranked Speculation, Growth and Aggressive first, second, and third, respectively.

14. Defendants specifically provided that they wanted to engage in day-trading. The account opening documents for the Master Account show that the Scires affirmatively instructed Arjent to embark on an aggressive trading strategy involving margin and option trading in a day-trading account.

15. Because the Scires sought to execute a sophisticated investment strategy, Arjent policy mandated the execution of an additional set of forms. The Scires thus executed a "Customer Margin and Short Agreement," an "Option Account Form" and "Day Trading Risk Disclosure" forms. These forms ensured that the Scires truly wanted to engage in their professed strategy and truly understood the risks involved.

16. At the time Defendants entered its relationship with Arjent, they had more than 10 years experience investing in stocks, more than 15 years in option trading, and more than five years experience trading in commodities. On the Options Account Form, Defendants also indicated under "Client Strategy Requests" that they were interested in several high risk trading options, including put writing, speculative stock option purchasing, and margin spread/straddle trading. Each of these options was specifically labeled high risk.

17. Arjent took several affirmative steps to ensure that Defendants understood the risks and costs associated with day trading. The firm's "Day Trading Risk Disclosure" form required that the Scires initial 9 statements emphasizing the significant market risks and costs associated with day trading. In signing the form, and initialing all of the individual disclosure statements included on the form, Defendants indicated that they understood the high-risk nature

of the day-trading process, and particularly understood that day trading on margin or short selling could result in losses beyond the initial investment.

18. In an abundance of caution, Arjent required that the Scires execute and update the "Day Trading Disclosure Form" twice. Still, Defendants executed each form and indicated that they understood all the risks involved. The day trading risk disclosure forms, like the option forms and the other account opening documents, demonstrate that all trading in the accounts was reasonable in light of the Defendants' requests, experience, financial condition and understanding of market risks. In addition, an Arjent Managing Director, Ronald Heineman, sent a letter to the Defendants in March of 2007, confirming that Arjent had conferred with the Scires several times (both in writing and over the phone) and confirmed that they were comfortable with their market risks. The Defendants never objected to Mr. Heineman's confirmation.

19. Arjent provided Defendants with monthly account statements. These statements disclosed all account activity and monthly balances.

20. Nevertheless, in December 2007, the Scires commenced the underlying arbitration proceeding before FINRA claiming that Arjent and its representatives breached its fiduciary duties and committed fraud in its role as Defendants' securities broker. Defendants now claim that they were unsophisticated investors who never understood the risks or nature of the transactions involved with day-trading. Defendants commenced the arbitration without ever providing any account analyses or reconciliations of the accounts in question. Plaintiffs have recently made a motion to compel production of such documents as it is clear that Defendants have commenced a proceeding without even knowing whether any money was lost.

5

21. The arbitration hearing has been scheduled in South Carolina for September 9, 10, 11 and 12, 2008.

## PLAINTIFF'S CLAIM

22. On July 7, 2008, Defendants moved to add non-signatory Plaintiff as an additional party-respondent to the arbitration.

23. Defendants are attempting to bind a non-signatory to an arbitration proceeding through a theory predicated on piercing the corporate veil. Defendants cannot allege any facts to demonstrate that Plaintiff is Arjent's alter-ego. Both entities observe independent corporate formalities, are separately registered with the Securities and Exchange Commission and maintain separate corporate books and records, and finances.

24. The issue as to whether Plaintiff can be added as an additional party to the arbitration is a question for this Court to resolve.

25. Since Plaintiff is not a party to any arbitration agreement with Defendants, the Court should permanently and forever stay Defendants' arbitration claim against Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a final judgment forever and permanently enjoining any arbitration claim by Defendants against Plaintiff, granting Plaintiff the costs and disbursements of this action and such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
      July 22, 2008

        Respectfully Submitted,

        GARVEY SCHUBERT BARER

By: _____
      Andrew J. Goodman, Esq.
      James Freeman, Esq.
      Attorneys for Plaintiff
      100 Wall Street, 20th Floor
      New York, New York  10005
      (212) 965-4534/4524