UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



ARJENT SERVICES, LLC,

        Plaintiff,

v.

JOSEPH M. SCIRE and JOYCE B. SCIRE,

        Defendants.

Case No. 08 CIV 6510

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION
AND TEMPORARY RESTRAINING ORDER TO STAY ARBITRATION**

Dated: New York, New York
      July 22, 2008

                                                        GARVEY SCHUBERT BARER
                                                        Andrew J. Goodman, Esq. (AG-3406)
                                                        James Freeman, Esq. (JF-8605)
                                                        *Attorneys for Plaintiff*
                                                        100 Wall Street, 20th Floor
                                                        New York, NY 10005
                                                        (212) 965-4534/4524

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARJENT SERVICES, LLC,<br><br>            Plaintiff,<br><br>v.<br><br>JOSEPH M. SCIRE and JOYCE B. SCIRE,<br><br>            Defendants. | Case No. _____ |

## PLAINTIFFS' MEMORANDUM OF LAW
### IN SUPPORT OF ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER TO STAY ARBITRATION

### PRELIMINARY STATEMENT

Plaintiff Arjent Services, LLC submits this memorandum of law in support of its motion, pursuant to Rule 65 of the <u>Federal Rules of Civil Procedure</u> for (a) a preliminary injunction to stay as to Plaintiff an arbitration commenced by Defendants Joseph. M. Scire and Joyce B. Scire (collectively "Defendants") pending final judgment in this action, and (b) for a temporary restraining order staying the arbitration as to Plaintiff pending hearing and determination of this action.

On July 7, 2008, Defendants (Claimants in the underlying arbitration proceeding) moved the FINRA Panel to add Plaintiff as an additional party to FINRA Dispute Resolution No. 07-03443 commenced against Arjent, Ltd. ("Arjent") and certain individuals, despite the fact that Plaintiff is <u>not</u> a signatory to the arbitration agreement. It is well-settled that the issue of whether a non-signatory can be bound to arbitrate claims is a matter to be decided by the Courts. Plaintiffs have therefore commenced this action and filed an Order to Show Cause for

NY_DOCS:601451.3

Preliminary Injunction and Temporary Restraining Order to stay the arbitration as against Plaintiff until this Court has had the opportunity to decide the issue.

Defendants' motion in the arbitration (Complaint, Exhibit B) argues that Plaintiff is Arjent's alter-ego. Consistent with the accompanying affidavit of Robert DePalo, duly sworn July 22, 2008, however, documentary evidence refutes Defendants' alter-ego claim as it is clear that both entities are separately organized, separately registered with the Securities and Exchange Commission and maintain separate books, records and assets. Based on the facts presented in this case, Defendants will be unable to pierce the corporate veil.

Accordingly, and for the reasons set forth below, the preliminary injunction and temporary restraining order should be granted, and the arbitration stayed as against Plaintiff pending resolution of this action.

## STATEMENT OF FACTS

The relevant facts are set forth in the accompanying Complaint, and affidavits of Robert DePalo (hereinafter the "Depalo Aff.") and Andrew Goodman ("Goodman Aff."), and will not be repeated in full here. Briefly stated, Defendants filed a Statement of Claim alleging several securities fraud counts and a claim of breach of fiduciary duty against Arjent. Defendants opened their accounts with Arjent specifically for the purpose of aggressively "day-trading" in speculative, high risk growth stocks. Defendants' own documents show that they saw themselves as sophisticated investors, with more than 20 years of combined experience trading options and equities on the public market.

In August of 2002, Defendants opened two self-employed IRA retirement accounts with Arjent and indicated on the Customer Agreement that they were interested in the investment objectives of "Growth with Risk" and "Speculation." In April of 2003, apparently satisfied with

Arjent, Defendants opened a master account in which to engage in margin and option day-trading. Pursuant to standard Arjent policy, the Scires provided a history of their trading experience and investment goals in an "Account Application and Customer Agreement" form. The information provided in these forms proves that the trading recommendations made in their accounts were reasonable and suitable to the Scires' interests and financial condition.

The documents make clear that the Defendants were high-net worth individuals, capable of understanding and bearing the market risk involved in the aggressive trading strategy they wanted. Defendants stated in documents signed by them that they had an approximate annual income over $250,000 per year, and had a net worth of over 5 million dollars. Defendants also executed several forms indicating that they were interested in high risk trading options, speculative stock option purchasing and margin spread/straddle training.

In March 2007, an Arjent Managing Director, Ronald Heineman, sent a letter to Defendants confirming that Arjent had conferred with Defendants several times (both in writing and over the phone) and confirmed that Defendants were comfortable with the market risks involved in day-trading. The Scires never objected to Mr. Heineman's confirmation. Upon the opening of each account, Arjent provided Claimants with monthly account statements. These statements disclosed all account activity and monthly balances. Despite all of this, in August of 2007, Defendant complained to Arjent regarding purported losses in their accounts and the FINRA arbitration proceeding was commenced shortly thereafter.

The parties to the arbitration are currently engaged in document production. A hearing is scheduled for September 9, 10, 11 and 12, 2008 in Columbia, South Carolina. Arjent (and its co-Respondents in arbitration) recently made a motion to compel production of documents because, amongst other deficiencies, Defendants have failed to produce any account analyses or account

reconciliations to demonstrate whether the Scires have even sustained any losses as a result of the trading. On July 7, 2008, Defendants' counsel moved the FINRA Panel to add Plaintiff as an additional party to the arbitration on the theory that there has been a "defacto merger" between it and Arjent. Plaintiffs now come before this Court to decide the issue as to whether Plaintiff may be added as an additional party to the underlying arbitration.

**ARGUMENT**

**POINT I**

**<u>PRELIMINARY INJUNCTION STANDARD</u>**

The standards for granting a temporary restraining order ("TRO") and a preliminary injunction are the same. <u>Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.</u>, 596 F.2d 70, 72 (2d Cir. 1979); <u>Spencer Trask Software and Info. Servs., LLC v. RPost Int'l Ltd.</u>, 190 F.Supp.2d 577, 580 (S.D.N.Y. 2002) ("the standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the <u>Federal Rules of Civil Procedure</u> are identical.")

The moving party must show: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly towards the party requesting the preliminary relief." <u>Gund, Inc. v. SKM Enterprises, Inc.</u>, 2001 WL 125366, *1 (S.D.N.Y. February 14, 2001).

## POINT II

## LIKELIHOOD OF SUCCESS ON THE MERITS

A.    THE COURT SHOULD DECIDE WHETHER PLAINTIFF IS BOUND BY THE ARBITRATION AGREEMENT.

Where two parties have not agreed to submit to an arbitration, the court should decide whether or not the disputing party is bound by the arbitration clause. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-46 (1995). It is well established that whether a party is bound by a given arbitration clause is a "question of arbitrability for the courts to decide." AFL-CIO v. A & M Heating, Air Conditioning, Ventilation & Sheet Metal, Inc. 314 F.Supp.2d 332 at 334 (S.D.N.Y., 2004); see also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547 (1964) ("whether or not the company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court.")

Any contention that a party who did not agree to arbitrate should be "forced to appear in an arbitral forum merely because its adversary alleges that the party is an alter ego of an entity that agreed to arbitrate flies in the face of the firmly established rule that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AFL-CIO, 314 F.Supp.2d at 345 (citing AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986)).

B.    PLAINTIFF WAS **NOT** A SIGNATORY TO THE ARBITRATION AGREEMENT AND THEREFORE CANNOT BE BOUND TO ARBITRATE DEFENDANTS' CLAIMS.

"Arbitration is contractual by nature," and "'[a] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Orange Chicken, L.L.C v. Nambe Mills, Inc., 2000 WL 1858556, *4 (S.D.N.Y. December 19, 2000); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353 (U.S. 1960)

"Agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract." Orange Chicken, 2000 WL 1858556 at *4.

Here, Plaintiff is not a signatory to the arbitration clause relied on by Defendants to assert its arbitrable claims. Defendants cannot dispute this. As a matter of law, therefore, Plaintiff cannot be bound to arbitrate Defendants' claims.

C.  DEFENDANTS CANNOT SHOW THAT PLAINTIFF AND ARJENT WERE ALTER EGOS

Under New York law, courts will pierce the corporate veil and hold one corporation liable for the obligations of another only when one corporation is a "dummy" for the another. Cartle Blanch (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc., 2 F.3d 24, 26 (2d Cir. 1992); Walkovszky v. Carlton, 18 N.Y.2d 414, 276 N.Y.S.2d 585 (N.Y. 1966). (The determinative factor is whether the corporation is a 'dummy' for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends."). Generally speaking however, affiliates are treated as legally distinct entities and "a contract under the corporate name of one is not treated as that of both." Id. at 26.

In the benchmark case of Thomson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773 (2d Cir. 1995), the court refused to hold a non-signatory party liable under an arbitration provision in a contract between a subsidiary of the party and another corporation. 64 F.3d at 777. There, a supplier of flight simulation training equipment who had entered into a working agreement with a subsidiary of Thomson, sought to bind Thomson to the arbitration provision in the working agreement. Despite finding that a non-signatory party may be bound to an arbitration agreement where the relationship between two corporations is sufficiently close as to justify "piercing the corporate veil," the court found that "as a general matter, a corporate

relationship alone is not sufficient to bind a non-signatory to an arbitration agreement." Id. (citing In re Keystone Shipping Co., 782 F. Supp. 28, 30-31 (S.D.N.Y. 1992)).

The Thomson court acknowledged that veil piercing determinations are "fact specific, and differ with the circumstances of each case." Id. (citing American Protein Corp v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988)). The court held that a parent corporation and its subsidiary will lose their distinct corporate identities when their conduct "demonstrates a virtual abandonment of separateness." Id. at 778 (citing Cartle Blanch, F.3d 24 at 26 ("No bank accounts, offices, stationery, transactions, or any other activities were maintained or carried on in the name of [the subsidiary].")

The court also looked to the 1991 decision in Passalacqua Builders Inc. v. Resnick Developers South, Inc., laying out ten factors which would "tend to show that defendant was a dominated corporation":

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

933 F.2d 131, 139 (2d Cir. 1991) (citing generally, Barber, Piercing the Corporate Veil, 17 Willamette L. Rev. 371, 398 (1981); Director's Guild of America v. Garrison Prod., 733 F. Supp. 755, 760-61 (S.D.N.Y. 1990); United States Barite Corp. v. M.V. Haris, 534 F. Supp. 328, 330

(D.C.N.Y. 1982). See also Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 53 (2d Cir.1984) (absence of corporate formalities relevant factor in piercing corporate veil"); American Protein Corp. v. Volvo, 844 F.2d 56 at 60 ("Factors indicating that a parent corporation controls its subsidiary include lack of normal corporate formality in the subsidiary's existence, under-capitalization, and personal use of the subsidiaries funds by the parent or owner.")

Using the above factors, the Thomson court did not find a sufficient showing that Thomson had exerted the degree of control over their subsidiary as to justify piercing the corporate veil. 64 F.3d 773 at 778. Despite the fact that "Thomson [had] common ownership with [subsidiary]; that Thomson actually controlled [subsidiary]; … [and] that Thomson incorporate [subsidiary] into its own organizational and decision-making structure," there was not an abandonment of the corporate structure. Id. The plaintiff had failed to show an absence of corporate formalities, and also failed to show an intermingling of corporate finances and directorship. Under the "totality of the circumstance," the court found that Thomson could not be bound to the arbitration agreement under a veil piercing theory. Id.

The situation at bar is similar to Thomson. Here, in its July 7, 2008 to the arbitrators, Defendants claim that Plaintiff should be added as an additional party to the arbitration because there has been a "defacto merger" between Plaintiff and Arjent. Defendants will be unable to demonstrate facts sufficient to support this assertion. As explained in the Depalo Aff., ¶ 5, Plaintiff cannot be deemed Arjent's alter-ego because the two companies are independently registered with the Securities and Exchange Commission, maintain separate books and records, were adequately capitalized on an independent basis, do not commingle funds, deal at arms length and exist as independent profit centers. The two entities have not abandoned any degree

of corporate formality; most importantly, they uniformly maintained separate and independent corporate finances. Here, unlike Thomson, the entities do not even have a parent/subsidiary relationship. *A fortiori,* under these circumstances, it is impossible to conclude that there has been some kind of "defacto merger" between the two companies, or that they are each other's alter ego.

Accordingly, Defendants cannot pierce the corporate veil and add non-signatory Plaintiff as an additional party to the arbitration.

## POINT III

## IRREPARABLE INJURY

The underlying arbitration is currently pending before FINRA and a hearing is scheduled for September 9, 10, 11 and 12, 2008. Although the Scires filed the arbitration on December 4, 2007 (see Complaint, Exhibit A), they did not seek to add Plaintiff until July 7, 2008, more than seven months later. Nor is the timing accidental. A conference is scheduled with the FINRA Arbitration Panel for July 24, 2008. Patently, by waiting seven months and then moving a mere two weeks before the conference, the Scires are trying to shift determination of the arbitrability issue from this Court to the arbitration panel. If successful, Plaintiff will be irreparably harmed because it will be forever deprived of its right to a judicial determination of arbitrability. This constitutes irreparable harm.

"The purpose of a preliminary injunction is to prevent irreparable injury and preserve a court's ability to render a meaningful decision on the merits." Fusco Group, Inc. v. Loss Consultants International, Inc., 462 F.Supp.2d 321, 326 ( N.D.N.Y. 2006); Cartier, Inc. v. Four Star Jewelry Creations, Inc., 2003 WL 21056809, *6 (S.D.N.Y. May 8, 2003); Warner Vision Entertainment v. Empire of Carolina, Inc., 101 F.3d 259, 261-62 (2d Cir. 1996).

Compelling arbitration of a matter not properly subject to arbitration constitutes "per se irreparable harm." Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union Local 365, 975 F. Supp. 445, 446-47 (E.D.N.Y. 1997) (finding that a party "may be presumed to suffer irreparable harm if forced to arbitrate a dispute it did not intend to be subject to arbitration") (citing Spear, Leeds & Kellogg v. Central Life Assurance Co., 879 F. Supp. 403, 404 (S.D.N.Y. 1995), rev'd on other grounds, 85 F.3d 21 (2d Cir. 1996)); see, e.g., Int'l Trust Co. of Bermuda, Ltd. v. Fahnstock & Co., Inc., 1995 WL 606275 at *3 (S.D.N.Y. Oct. 12, 1995) (stating that "[a] party that has not agreed to arbitrate a dispute will suffer irreparable harm if it is forced to submit to arbitration"); Tellium, Inc. v. Corning Inc., 2004 WL 307238 at *3 (S.D.N.Y. Feb. 12, 2004) (finding that a party who never agreed to arbitrate would suffer irreparable harm by being forced to expend time and resources in connection with an arbitration).

Moreover, given that the arbitration conference is a mere two days away, a temporary restraining order against proceeding in the arbitration as to Plaintiff is needed in order to avoid the prejudice of this irreparable harm to Plaintiff.

Conversely, the Scires are not at all prejudiced by a stay as against Plaintiff, since the arbitration can proceed against the extant parties. Further, any prejudice to the Scires is their own fault for having waited seven months to file their motion to add Plaintiff to the arbitration. Conversely, Plaintiff has researched, served and filed this action and preliminary injunction motion within two weeks after the Scires filed with the arbitration panel to add Plaintiff as an arbitration respondent. Accordingly, the balance of the equities weigh heavily in favor of staying the arbitration as to Plaintiff.

## CONCLUSION

For all the forgoing reasons, Plaintiff respectfully requests that the Court (1) grant its motion for a preliminary injunction staying the arbitration as against Plaintiff pending final judgment in this action, (2) issue a temporary restraining order staying the arbitration pending resolution of this motion; and (3) grant such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
      July 22, 2008

                              GARVEY SCHUBERT BARER

                              By: _____
                                  Andrew J. Goodman, Esq. (AG-3406)
                                  James Freeman, Esq. (JF-8605)
                                  *Attorneys for Plaintiffs*
                                  100 Wall Street, 20th Floor
                                  New York, New York 10005
                                  (212) 965-4534/4524